```
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
              EASTERN DIVISION
```

```
JOSÉ VAZQUEZ-AGUILAR, JUSTA HERNANDEZ- )
ROJO, JOSAFAT JUAREZ-CHAVEZ, SANDRA     )
CATALINA-TORRES, and SUSANA MENDOZA-    )
BUSTILLO, on behalf of themselves and   )
all other similarly situated persons,   )
                                        )
                Plaintiffs,             )
                                        )
v.                                      )   COMPLAINT
                                        )
ARTURO GASCA, MARIA D. GASCA, and       )
LALAJA, INC., d/b/a EL CERRO GRANDE     )   COLLECTIVE ACTION § 216(b)
MEXICAN RESTAURANT,                     )   Civil Action No.:
                                        )
                Defendants.             )
_____)
```

## I. PRELIMINARY STATEMENT

1. This is a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b) by two current and three former employees against a closely held corporate defendant operated by the husband and wife defendants for their restaurant enterprise in and around New Bern in Craven County, North Carolina.

2. The defendant corporation was and is part of a single business enterprise operated by its owner/officers defendants Arturo Gasca and Maria Gasca since at least 2007 in one or more counties in North Carolina that are listed in 28 U.S.C. §§ 113(a). This action is brought under the FLSA for unpaid overtime wages based upon the defendants' failure to pay the named plaintiffs and the group of workers they seek to represent in a collective action pursuant to 29 U.S.C. § 216(b) the wages they were due at the overtime rate required by 29 U.S.C. §207 when the defendants jointly and severally employed the plaintiffs and that group of workers to perform hours worked in excess of forty hours in the same workweek.

3. Based upon their claims under 29 U.S.C. § 207 of the Fair Labor Standards Act, the plaintiffs, and the members of the collective group of workers they seek to represent under the FLSA seek payment of back wages and an equal amount of liquidated damages, attorney fees, interest, and costs under 29 U.S.C. §216(b).

## II. JURISDICTION

4. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§1331 and 1337, and 29 U.S.C. § 216(b).

5. This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## III. VENUE

6. Venue over this action lies in this Court pursuant to 28 U.S.C. §§1391(b)(2), 1391(c)(2), and 1391(d), and 29 U.S.C. §216(b). At all times relevant to this action continuing through the present date, a substantial part of the events or omissions by the defendants giving rise to this action occurred in one or more of the counties listed in 28 U.S.C. § 113(a), and defendants had and continues to have permanent offices located at 2503 Dr. Martin Luther King Jr. Boulevard, New Bern, North Carolina 28562 at all times relevant to this action.

## IV. NAMED PLAINTIFFS

6. From well before November 2016 and continuing through at the present date, plaintiff José Vazquez-Aguilar ("Vazquez") worked for and was continuously employed on a fulltime basis by LALAJA, INC. doing business as El Cerro Grande Mexican Restaurant ("Lalaja") in the restaurant enterprise operated by defendants Arturo Gasca and his spouse Maria Gasca. During that entire time period, plaintiff Vazquez worked as a waiter for Lalaja and customarily and regularly received and continues to receive more than $30.00 a month in tips for that work.

During that entire time period and continuing through the present date, plaintiff Vazquez lived and continues to live in Craven County, North Carolina.

7. From well before November 2016 and continuing through at the present date, plaintiff Justa Hernandez-Rojo ("Hernandez") also worked for and was continuously employed on a fulltime basis by LALAJA, INC. doing business as El Cerro Grande Mexican Restaurant ("Lalaja") in the restaurant enterprise operated by defendants Arturo Gasca and his spouse Maria Gasca. During that entire time period, plaintiff Hernandez worked as a dishwasher for Lalaja. During that same time period and continuing through the present date, plaintiff Hernandez lived and continues to live in Craven County, North Carolina.

8. From in or about July 2018 through in or about July 2019, plaintiff Sandra Catalina-Torres ("Catalina") worked for and was continuously employed on a fulltime basis by LALAJA, INC. doing business as El Cerro Grande Mexican Restaurant in the restaurant enterprise operated by defendants Arturo Gasca and his spouse Maria Gasca. During that entire time period, plaintiff Catalina worked as a taco chip server for Lalaja. During that same time period and continuing through the present date, plaintiff Catalina lived and continues to live in Craven County, North Carolina.

9. From in or about November 2016 through in or about March 2018, plaintiff Josafat Juarez-Chavez ("Juarez") worked for and was continuously and employed on a fulltime basis by LALAJA, INC. doing business as El Cerro Grande Mexican Restaurant in the restaurant enterprise operated by defendants Arturo Gasca and his spouse Maria Gasca. During that entire time period, plaintiff Juarez worked as a cook for Lalaja. During that same time period and continuing through

the present date, plaintiff Juarez lived and continues to live in Craven County, North Carolina.

10. From in or about July 2018 through in or about July 2019, plaintiff Sandra Catalina-Torres ("Catalina") worked for and was continuously employed on a fulltime basis by LALAJA, INC. doing business as El Cerro Grande Mexican Restaurant in the restaurant enterprise operated by defendants Arturo Gasca and his spouse Maria Gasca. During that entire time period, plaintiff Mendoza worked as a taco chip server for Lalaja. During that same time period and continuing through the present date, plaintiff Catalina lived and continues to live in Craven County, North Carolina.

11. From in or about November 2016 through in or about February 2017, plaintiff Susana Mendoza-Bustillo ("Mendoza") worked for and was continuously employed on a fulltime basis by LALAJA, INC. doing business as El Cerro Grande Mexican Restaurant in the restaurant enterprise operated by defendants Arturo Gasca and his spouse Maria Gasca. During that entire time period, plaintiff Mendoza worked as a taco chip server for Lalaja. During that same time period and continuing through the present date, plaintiff Mendoza lived and continues to live in Craven County, North Carolina.

12. During each of the four chronological years immediately preceding the date on which this action was filed and for all of the entire time periods described in paragraph 21 below, upon information and belief, the five named plaintiffs and the similarly situated workers that they seek to represent were employed in a restaurant enterprise named LALAJA, INC. d/b/a El Cerro Grande Mexican Restaurant that was owned and operated by the two individual defendants that:

    (a) had and has employees handling, selling, or otherwise

working on goods or materials that have been moved in or produced for interstate commerce by some person or entity other than the defendants, and

(b) is and for each chronological year starting with October 1, 2015 and continuing through the present date, was an enterprise whose annual gross volume of sales made or business done is and was not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

V. DEFENDANTS

13. Since at least 2007, the defendant closely held for profit corporation LALAJA, INC. (hereinafter referred to as "Lalaja") was and continues to be a single business enterprise owned and operated by defendants Arturo Gasca and his spouse Maria D. Gasca. Maria D. Gasca, 2503 Dr. Martin Luther King, Jr. Boulevard, New Bern, North Carolina 28562, is the registered agent for service of process on LALAJA, INC.

14. At all times in the four years immediately preceding the date on which this action was filed and continuing through the present date, defendant Arturo Gasca ("Mr. Gasca") has been and continues to be the President of Lalaja. During that entire time period, Mr. Gasca has lived and continues to live in Craven County, North Carolina.

15. During that same 4-year time period, acting in his capacity as President of Lalaja, Mr. Gasca has personally determined on a day to day basis the wage rate, method of wage payment, frequency of wage payment, and the amount of wage payment that was actually paid on a bi-weekly basis to all named plaintiffs and every other similarly situated person who worked for Lalaja and the two Gasca defendants during that same time period. Acting in that same capacity, he has also directed, controlled, and supervised on a daily basis the work activities, hours

5

of work, and work schedules of all of the named plaintiffs and every other similarly situated person who worked for Lalaja and the two Gasca defendants during that same time period.

16. At all times in the four years immediately preceding the date on which this action was filed and continuing through the present date, defendant Maria D. Gasca ("Mrs. Gasca") has been and continues to be the Vice President of Lalaja. During that entire time period, Mrs. Gasca has lived and continues to live in Craven County, North Carolina.

17. During that same 4-year time period, acting in her capacity as President of Lalaja, Mrs. Gasca has personally assisted Mr. Gasca to determine (and, in his absence, solely determined) on a day to day basis the wage rate, method of wage payment, frequency of wage payment, and the amount of wage payment that was actually paid on a bi-weekly basis to all named plaintiffs and every other similarly situated person who worked for Lalaja and the two Gasca defendants during that same time period. Acting in that same capacity, she has also assisted Mr. Gasca to direct, control, and supervise (and, in the absence of Mr. Gasca, been the sole person responsible for doing so) on a daily basis the work activities, hours of work, and work schedules of all of the named plaintiffs and every other similarly situated person who worked for Lalaja and the two Gasca defendants during that same time period.

18. At all times in the four years immediately preceding the date on which this action was filed and continuing through the present date, defendant Lalaja engaged in and continues to be engaged in the operation of a Mexican restaurant known as El Cerro Grande Mexican Restaurant located at 2503 Dr. Martin Luther King Jr. Boulevard, New Bern, North Carolina 28562 in Craven County, North Carolina.

VI. <u>FLSA STATUTORY CLASS ACTION ALLEGATIONS</u>

19. The named plaintiffs maintain this action against all of the defendants, jointly and severally, for and on behalf of himself and all other similarly situated current and/or former joint employees of the defendants who jointly employed them and those other similarly situated persons to perform hours worked in excess of 40 hours worked in the same workweek in the restaurant enterprise of Lalaja in and around Craven County, North Carolina for each workweek ending in the three chronological years immediately preceding the date on which this action was filed and continuing thereafter ending on the date final judgment in this action is entered by a U.S. District Court pursuant to the statutory class action procedure specified at 29 U.S.C. §216(b) for each such similarly situated current and/or former employee of the defendants in that same time period who files, will file, or who has filed a written consent to be a party to this action that is required by 29 U.S.C. §216(b) within the applicable statute of limitation(s) for any such workweek.

20. The statutory class of similarly situated persons under 29 U.S.C. §216(b) described in ¶19 above is based upon the failure of the defendants to pay an overtime premium at the rate required by 29 U.S.C. § 207(a)(1) for all hours worked over 40 in the same workweek to the named plaintiffs and each member of that statutory class that the named plaintiffs seek to represent for each hour or part of an hour of actual work that each such similarly situated person was or will be jointly or severally employed by one or more of the defendants to perform hours worked over 40 in the same workweek in the defendants' restaurant enterprise described in ¶¶6-18 above in the time period described in ¶19 above.

VII. <u>FACTUAL ALLEGATIONS</u>

21. At all times in the three year time period immediately preceding the date on which this action was filed and continuing thereafter, the defendants jointly and severally employed or continue to jointly and severally employ one or more of the named plaintiffs and/or the similarly situated employees of the defendants that are described in ¶¶6-20, inclusive, above of this complaint in the defendants' restaurant enterprise that is described in ¶¶6-18 above by the defendants to provide Mexican food, beverages, entertainment, and catering services for the defendants' customers in North Carolina for varying periods of time described in ¶¶6-18, inclusive above of this complaint in that same enterprise. At all times relevant to this action, the defendants regularly employed in the defendants' enterprise a workforce of approximately thirty (30) employees that the two individual defendants assigned to work to perform different tasks on any given day.

22. During the time from before November 2016 and continuing through the present date that the defendants jointly and severally employed and will continue to employ plaintiff Vazquez and other workers as waiters, the defendants did not accurately record the total quantity of hours worked by plaintiff Vazquez and those other waiters for each workweek that they were and will be employed by the defendants.

23. During that same time period plaintiff Vazquez customarily and regularly worked approximately 62-65 hours per workweek as a waiter but before in or about March or April 2019, the defendants regularly paid him for only 80 hours worked per workweek.

24. Upon information and belief, during the time period described in ¶23 above, the defendants engaged in the same or similar practice as described in ¶23 above with respect to the other workers whom the defendants jointly and severally employed as waiters.

25. Upon information and belief, at all times in the time period described in ¶21 above, the defendants claimed the tips that plaintiff Vazquez and other employees received in their work as waiters at the rate of $4.75 per hour in purported compliance with their obligation to pay the plaintiff and those other employees both the minimum wage at the rate required by 29 U.S.C. § 206(a) when the plaintiff and those other employees worked 40 or less hours per workweek as waiters and overtime wages at the rate required by 29 U.S.C. § 207(a)(1) when the plaintiff and those other employees worked more than 40 hours in the same workweek as waiters.

26. Before March or April 2019, the defendants did not inform the plaintiff or any other of the other employees described in ¶25 above in advance of the defendants' use of the tip credit provisions that are described in ¶25 above on any date before April 2019.

27. Upon information and belief, even after March or April 2019 and continuing through the present date, the defendants still have not informed the plaintiff or any other of the other employees described in ¶25 above in advance of the defendants' use of the tip credit provisions that are described in ¶25 above for any date in or after April 2019.

28. During the entire time period described in ¶21 above, the defendants did not obtain from any "tipped employee" (as defined in 29 U.S.C. § 203(t)) any weekly or monthly report by that employee of the amount of tips received by that employee for any particular week or month in the course of that tipped employee's employment by one or more of the defendants.

29. During the entire time period described in ¶21 above, the defendants did not require or make it a condition of the continued employment of any "tipped employee" that any "tipped employee" provide

9

Case 4:19-cv-00171-FL   Document 1   Filed 11/29/19   Page 9 of 16

to one or more of the defendants any weekly or monthly report of the amount of tips received by that employee for any particular week or month in the course of that tipped employee's employment by one or more of the defendants.

30.  During the time from before November 2016 and continuing through the present date that the defendants jointly and severally employed and will continue to employ plaintiff Hernandez and other workers as dishwashers, the defendants did not accurately record the total quantity of hours worked by plaintiff Hernandez and those other dishwashers for each workweek that they were and will be employed as dishwashers by the defendants.

31.  During that same time period plaintiff Hernandez and the other employees whom the defendants employed as dishwashers customarily and regularly worked approximately 52 to 55 hours per workweek as dishwashers but before in or about March or April 2019 they were always paid a lump sum without payment of the overtime premium required by 29 U.S.C. § 207(a)(1).  Before in or about March or April 2019, that lump sum was paid partially in cash and partially by check.  Upon information and belief, after March or April 2019, the defendants regularly paid her and those other dishwashers that lump sum only by check.  For plaintiff Hernandez, the total amount of that lump sum varied from pay period to pay period during that same time period.  On information and belief, that lump still did not include any payment of the overtime premium required by 29 U.S.C. § 207(a)(1).

32.  During the time from before November 2016 and continuing through the present date that the defendants jointly and severally employed and will continue to employ plaintiff Juarez and other workers as cooks, the defendants did not accurately record the total quantity of

hours worked by plaintiff Juarez and those other cooks for each workweek that they were and will be employed as cooks by the defendants.

33. During that same time period plaintiff Juarez and the other employees whom the defendants employed as cooks customarily and regularly worked approximately 66 hours per workweek as cooks but before in or about March or April 2019 were always paid a lump sum without payment of the overtime premium required by 29 U.S.C. § 207(a)(1). Before in or about March or April 2019, the lump sum that the defendants paid in cash for every two-week pay period to plaintiff Juarez was $1,400.00. Upon information and belief, the defendants made similar lump sum payments to the other persons that the defendants employed as cooks in the amount for every two-week pay period.

34. Upon information and belief, after March or April 2019, the defendants continued to pay the persons they employed as cooks a lump sum but only by check. On information and belief, that lump still did not include any payment of the overtime premium required by 29 U.S.C. § 207(a)(1).

35. During that same time period plaintiff Hernandez and the other employees whom the defendants employed as dishwashers customarily and regularly worked approximately 52 to 55 hours per workweek as dishwashers but before in or about March or April 2019 they were always paid a lump sum without payment of the overtime premium required by 29 U.S.C. § 207(a)(1). Before in or about March or April 2019, that lump sum was paid partially in cash and partially by check. Upon information and belief, after March or April 2019, the defendants regularly paid her and those other dishwashers that lump sum only by check. For plaintiff Hernandez, the total amount of that lump sum varied from pay period to pay period during that same time period. On information and belief,

11

that lump still did not include any payment of the overtime premium required by 29 U.S.C. § 207(a)(1).

36. During the time from before November 2016 and continuing through March or April 2019 that the defendants jointly and severally employed and will continue to employ plaintiffs Mendoza and Catalina and other workers as taco chip servers, the defendants did not accurately record the total quantity of hours worked by those plaintiffs and those other persons employed as taco chip servers for each workweek that they were and will be employed as taco chip servers by the defendants.

37. During that same time period plaintiffs Mendoza and Catalina and the other employees whom the defendants employed as taco chip servers customarily and regularly worked approximately 80 to 85 hours per workweek as taco chip servers but before in or about March or April 2019 were always paid in cash at a straight hourly rate and the regular rate of $9/hour without payment of the overtime premium required by 29 U.S.C. § 207(a)(1). After in or about March or April 2019, the defendants reduced the hours worked per workweek by those persons that they employed as taco chip servers to substantially less than 40 hours per workweek and continued to pay them at the regular hourly rate of $9.00.

38. The defendants provided and paid for workers' compensation insurance for the work performed by the plaintiffs and the workers who worked with the plaintiffs as part of the defendants' enterprise.

39. The defendants supplied, fueled, and maintained all of the major equipment and vehicles that were necessary for the day to day operation of the defendants' restaurant enterprise. The individual defendants also decided what the menu would be for the customers of the restaurant and what prices would be charged for meals that their

restaurant provided to the patrons of that restaurant enterprise. The equipment supplied by the defendants included, but was not limited to, the stoves and all appliances used to prepare the meals and food sold to the customers of the restaurant, the fuel and electricity for the stoves and appliances, and all of the food and other materials that were used to prepare the food that was provided to the patrons of the defendants' restaurant enterprise.

40. The defendants supplied all of the funds to pay the named plaintiffs and their co-workers.

41. The individual defendants had final say as to who was hired to work in the restaurant. The individual defendants also had the right to fire the named plaintiffs any time as at will employees, and the defendants did not hire the named plaintiffs or any of their co-workers for any specific duration or any specific project.

42. The individual defendants had final say as to who was fired or disciplined for misconduct at work in the work that the named plaintiffs performed for the defendants.

43. During the entire time period described in ¶21 above, none of the plaintiffs operated an independent business, and they all were economically dependent upon the defendants for work and wages on a day to day basis.

44. Upon information and belief, the defendants did not post any written notice required by 29 C.F.R. § 516.4 as to the rights of employees to payment of the minimum wage under 29 U.S.C. §§ 206(a) and payment at the overtime rate described in 207(a)(1) for all hours worked in excess of 40 in the same workweek.

45. As a direct and proximate result of the actions and omissions that are alleged in this Complaint, the named plaintiffs and the members

13

of the collective action defined in ¶¶19-20 above who worked in excess of forty (40) hours per week in the same workweek did not receive wages at the rate and in the amount required by 29 U.S.C. § 207(a)(1).

46. Long before 2015, each of the defendants was and continues to be an experienced employer who was and continues to be familiar with the FLSA and the NCWHA, and the requirements of both of those statutes with respect to what they require and required with respect to the wage rate to be paid for work in excess of forty (40) hours in the same workweek, and what is and was considered to be the regular rate at which an employee is employed under the FLSA. The defendants acted in reckless and willful disregard of the requirements of the FLSA with respect to these matters, and as a consequence of this willful and reckless disregard of the rights of the plaintiffs and the members of the collective action defined in ¶¶19-20 to payment of wages at the overtime rate required by 29 U.S.C. § 207(a)(1) have been violated for the entire three-year time period immediately preceding the date on which this action was filed.

VIII. FIRST CLAIM FOR RELIEF (FLSA § 207)

47. Paragraphs 1 through 46 above are realleged and incorporated herein by reference by the named plaintiffs and each member of the collective action described in ¶¶19-20 above of this complaint that the named plaintiffs seek to represent pursuant to 29 U.S.C. §216(b) against all defendants.

48. The defendants did not pay all wages due to the named plaintiffs and the collective group of persons defined in ¶¶19-20 above of this complaint that the named plaintiffs seeks to represent under 29 U.S.C. §216(b) at the rate required by 29 U.S.C. § 207(a) for the work described in ¶¶6-45 above of this Complaint that was part of the

14

defendants' enterprise that is described in ¶¶12-18 above.

49. As a result of the willful and reckless disregard of the right of the plaintiffs and the members of the collective action defined in ¶¶19-20 above to payment of wages at the overtime rate required by and described in 29 U.S.C. § 207(a)(1), the named plaintiffs and each such collective action member have suffered damages in the form of unpaid wages and liquidated damages that may be recovered under 29 U.S.C. §216(b).

WHEREFORE Plaintiffs respectfully request that the Court:

(a)  Grant a jury trial on all issues so triable;

(b)  Certify the named plaintiffs as representative of the collective group of persons defined in ¶¶19-20 above of this Complaint in a collective action for back wages and liquidated damages under 29 U.S.C. §§ 207(a) and 216(b) pursuant to 29 U.S.C. §216(b);

(c)  Enter judgment under the FLSA against defendants LALAJA, INC. d/b/a El Cerro Grande Mexican Restaurant, Arturo Gasca, and his spouse, Maria D. Gasca, jointly and severally, and in favor of the named plaintiffs and each member of the collective action defined in ¶¶19-20 above for compensatory damages against the defendants under the First Claim for Relief in an amount equal to the total of the unpaid wages due each of the named plaintiffs and each member of that same collective action under 29 U.S.C. §§ 207(a)(1) and 216(b) for any workweek in which each of the named plaintiffs and each member of that same collective action performed any of the work described in ¶¶6-45, inclusive, plus an equal additional amount as liquidated damages under 29 U.S.C. § 216(b), plus any interest in the manner and at the rate authorized by law under 29 U.S.C. § 216(b);

(d)  Award the named plaintiffs the costs of this action against

the defendants LALAJA, INC. d/b/a El Cerro Grande Mexican Restaurant, Arturo Gasca, and his spouse, Maria D. Gasca, jointly and severally;

(e) Award the named plaintiffs reasonable attorney fees under and N.C.Gen.Stat. §95-25.22(d) and 29 U.S.C. §216(b) against the defendants LALAJA, INC. d/b/a El Cerro Grande Mexican Restaurant, Arturo Gasca, and his spouse, Maria D. Gasca, jointly and severally;

(f) Award such other relief as may be just and proper in this action.

This the 29th day of November, 2019.

    LAW OFFICE OF ROBERT J. WILLIS, P.A.

BY:/s/Robert J. Willis
    Robert J. Willis
    Attorney at Law
    NC Bar #10730
    (mailing address)
    P.O. Box 1828
    Pittsboro, NC  27312
    Tel:(919)821-9031
    Fax:(919)821-1763
    488 Thompson Street
    Pittsboro, NC  27312
    Counsel for Plaintiffs
    rwillis@rjwillis-law.com