IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:19-CV-171-FL

| | | |
|---|---|---|
| JOSE VAZQUEZ-AGUILAR, JUSTA HERNANDEZ-ROJO, JOSAFAT JUAREZ-CHAVEZ, SUSANA MENDOZA-BUSTILLO, SANDRA CATALINA-TORRES, on behalf of themselves and all other similarly situated persons, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| ARTURO GASCA, MARIA D. GASCA, and LALAJA, INC., d/b/a El Cerro Grande Restaurant, | ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on plaintiffs' motion to conditionally certify collective action under the Fair Labor Standards Act (FLSA) and to authorize issuance of notice to putative collective action members. (DE 33). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the court grants plaintiffs' motion on the terms set forth herein.

**STATEMENT OF THE CASE**

Plaintiffs commenced this action on November 29, 2019, and filed amended complaint on December 2, 2019, asserting a claim for violation of the overtime pay provisions of the FLSA, 29 U.S.C. § 207(a), on behalf of themselves and all other similarly situated persons who were employed by defendants for work at the El Cerro Grande Mexican Restaurant, in New Bern, North

Carolina (the "restaurant"). Defendants Arturo Gasca and Maria D. Gasca are alleged to be individual owners and operators of defendant Lalaja Inc., which does business as the restaurant.

In their complaint,[1] plaintiffs seek certification of a collective action for back wages and liquidated damages under 29 U.S.C. § 216(b), on behalf of a group of persons defined to include all "current and/or former joint employees of the defendants who jointly employed them and those other similarly situated persons to perform hours worked in excess of 40 hours worked in the same workweek in the restaurant enterprise of [defendant Lalaja, Inc.] in and around Craven County, North Carolina for each workweek ending in the three chronological years immediately preceding the date on which this action was filed." (Compl. ¶ 19). Plaintiffs assert a failure by defendants to pay "an overtime premium at the rate required . . . for all hours worked over 40 in the same workweek" to plaintiffs and proposed collective action members. (Id. ¶ 20). Plaintiffs also seek costs, attorney fees, and trial by jury.

The court entered a case management order on March 9, 2020, providing for an initial phase of discovery relevant to the topic of collective action certification, as well as deadlines for filing by plaintiffs of motions for conditional certification and to approve proposed form of notice. The case management order provides that a second phase of merits discovery shall commence after the court's ruling on any motion for conditional certification.

Plaintiffs filed the instant motion on May 12, 2020, seeking an order "[c]onditionally certifying this action as a FLSA collective action pursuant to 29 U.S.C. § 216(b) for the following three . . . groups of workers who were employed by [defendants] in the [restaurant] at any time in the period from November 29, 2016 through March 19, 2019:"

> (a) "Tipped Worker Class" consisting of all tipped employees of the Defendants who were not paid cash wages of at least $2.13 per hour and the minimum and

---

[1] Hereinafter, all references to the "complaint" in the text, or "Compl." in citations, are to the amended complaint filed December 2, 2019.

2

overtime rates required by 29 U.S.C. §§ 203(m), 206(a)(1), and 207(a)(1), and 29 C.F.R. §§ 531.50(a)(1), 531.60, and 780.107.

(b) "Salary Worker Class" consisting of all cooks and dishwashers who were paid a flat weekly wage as employees of the Defendants.

(c) "Straight Time Worker Class" consisting of taco chip servers and other non-exempt employees who were paid a straight hourly wage for all hours worked even when they worked more than 40 hours in the same workweek.

(Mot. (DE 33) at 2). Plaintiffs seek court authorization for notice to be issued to proposed opt-in plaintiffs. In addition, plaintiffs seek approval of a proposed notice attached to the motion, method for distribution of the same, and provision of contact information of proposed opt-in plaintiffs to aid in such distribution.

In support of the motion, plaintiffs rely upon 1) their own declarations; 2) declarations of Gerardo Quezada-Mendoza ("Quezada") and Edduar Ruiz-Macias ("Ruiz"), who are former employees of the restaurant; 3) a declaration of Yoana Caceres ("Caceres"), who is legal assistant for counsel for plaintiffs; and 4) defendants' responses to plaintiffs' interrogatories. In opposition, defendants rely upon 1) affidavits of Rogelio Morales ("Morales") and Blanca Gomez ("Gomez"), current employees of the restaurant; 2) time records for plaintiff Jose Vazquez-Aguilar ("Vazquez") and former employee Quezada. In reply, plaintiffs rely upon defendants' supplemental interrogatory responses.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff Vazquez has worked at the restaurant since before November 2016 as a waiter customarily receiving more than $30.00 per month in tips. Plaintiff Justa Hernandez-Rojo ("Hernandez") has worked at the restaurant since before November 2016 as a dishwasher. Plaintiff Sandra Catalina-Torres ("Catalina") worked at the restaurant from about July 2018 to July 2019 as a taco chip server. Plaintiff Josafat Juarez-Chavez ("Juarez") worked at the restaurant from about November 2016 to

3

March 2018 as a cook. Plaintiff Susana Mendoza-Bustillo ("Mendoza") worked at the restaurant from about November 2016 to February 2017 as a taco chip server.

According to the complaint, at all times relevant to this action, defendants did not accurately record the hours worked by plaintiffs and other waiters, dishwashers, cooks, and taco chip servers. Before March 2019, plaintiff Vazquez regularly worked 62-65 hours per workweek, while defendants regularly paid him for only 40 hours per workweek. Defendants also claimed a "tip credit" for plaintiff Vazquez and other waiters, without informing plaintiff Vazquez or other waiters of the use of such credit. (Compl. ¶ 27).

In addition, at least before March 2019, plaintiff Hernandez and other dishwashers regularly worked 52 to 55 hours per workweek, but allegedly were paid a lump sum without payment of overtime premium. Similarly, before April 2019, plaintiff Juarez and other cooks regularly worked 66 hours per workweek, but allegedly were paid a lump sum without payment of overtime premium.

Before April 2019, plaintiffs Mendoza and Catalina and other servers regularly worked 80-85 hours per workweek, but allegedly were paid in cash at a straight hourly rate without payment of the overtime premium. After April 2019, defendants reduced their hours to substantially less than 40 hours per workweek and allegedly continued to pay them at the same hourly rate.

Additional facts pertinent to the instant motion will be discussed in the analysis herein.

## COURT'S DISCUSSION

The statute governing FLSA collective actions, 29 U.S.C. § 216(b), provides, in pertinent part:

> An action to recover the liability prescribed in the [FLSA] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such

action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Accordingly, there are two requirements for maintenance of such an FLSA action, also known as a "collective action": 1) the plaintiffs who are joined in the action must be "similarly situated"; and 2) they must opt in by filing their consent to sue with the court. Id.; Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 173 (1989).

Although the statute does not set forth a process for certifying the members of a collective action, "[l]ower courts have borrowed class-action terminology to describe the process of joining co-plaintiffs under 29 U.S.C. § 216(b)," despite the "significant differences between certification under Federal Rule of Civil Procedure 23 and the joinder process under § 216(b)." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 n. 1 (2013).

Ordinarily, district courts have followed a two-stage process for certifying members of an FLSA collective action. First, at the notice stage, early in a case, the named plaintiffs may seek "conditional certification" based upon a limited record, including approval of a notice to putative collective action members of their right to opt in. Id. at 70. A final determination on certification is made later, typically after discovery but before trial, when the court has available to it substantially more information. See, e.g., Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 515 (2d Cir. 2020); Rosinbaum v. Flowers Foods, Inc., 238 F. Supp. 3d 738, 743 (E.D.N.C. 2017).

The notice stage, subject of the instant motion, is grounded in the recognition by the United States Supreme Court, in Hoffman-La Roche, that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." 493 U.S. at 169. "Congress has stated its policy that [FLSA] plaintiffs should have the opportunity to proceed collectively," and "[t]he broad remedial goal of the statute should be enforced to the full extent of its terms." Id. at 170, 173.

"A collective action allows [FLSA] plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources," and "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." Id. at 170. "Section 216(b)'s affirmative permission for employees to proceed on behalf of those similarly situated must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." Id. (citing Fed. R. Civ. P. 83). "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." Id.

The statute does not define the terms "similarly situated" for purposes of determining collective action membership. The Supreme Court and the United States Court of Appeals for the Fourth Circuit also have not announced a test to determine whether individuals are "similarly situated." This court previously has used a test adopted originally from a FLSA treatise, whereby "plaintiffs must raise a similar legal issue as to coverage, exemption, or nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical." De Luna-Guerrero v. N. Carolina Grower's Ass'n, Inc., 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) (quoting Kearns, The Fair Labor Standards Act, § 18.IV.D.3); see, e.g., Rosinbaum v. Flowers Foods, Inc., 238 F. Supp. 3d 738, 743 (E.D.N.C. 2017); Mondragon v. Scott Farms, Inc., No. 5:17-CV-00356-FL, 2019 WL 489117, at *5 (E.D.N.C. Feb. 7, 2019).

Several circuit courts of appeal recently have addressed comprehensively a standard for determining whether employees are "similarly situated" for purposes of an FLSA collective action.

6

For example, the Second Circuit held that "to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." Scott v. Chipotle Mexican Grill, Inc., 954 F.3d 502, 516 (2d Cir. 2020). "That is, party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." Id. Likewise, the Ninth Circuit has held that "plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." Campbell v. City of Los Angeles, 903 F.3d 1090, 1117 (9th Cir. 2018); see also O'Brien v. Ed Donnelly Enterprises, Inc., 575 F.3d 567, 584-85 (6th Cir. 2009) ("[P]laintiffs were similarly situated, because their claims were unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.").

In this case, plaintiffs have demonstrated for purposes of conditional certification that proposed opt-in plaintiffs are "similarly situated," under any of the foregoing definitions.[2] The court first sets forth below its reasons for determining that plaintiffs are similarly situated, followed by discussion of plaintiffs' proposed notice.

A.      Similarly Situated

Proposed opt-in plaintiffs are similarly situated to named plaintiffs for several reasons. First, all proposed opt-in plaintiffs share with at least one named plaintiff similar issues of law and fact material to the disposition of their FLSA claims. For example, named plaintiff Vazquez's claim shares similar issues of law and fact with claims of the proposed subclass including waiters

---

[2]      Defendants argue that while courts frequently describe a plaintiff's burden at the conditional certification stage as "lenient and requiring only a modest factual showing," a plaintiff's burden increases to an "intermediate" level when the parties have engaged in some discovery on the certification issue, as here, requiring inquiry into "whether a sound basis exists for proceeding as a collective action while also considering all evidence available at the time." (Opp. (DE 35) at 5 (internal quotations omitted)). Where the Fourth Circuit has not addressed this standard of review, the court assumes without deciding that an intermediate level of burden applies.

at the restaurant who were tipped employees, regarding whether defendants properly recorded and paid their overtime hours prior to March 2019. (See Vazquez Decl. ¶¶ 5-7; Macias Decl. ¶¶ 6-8; Quezeda Decl. ¶¶ 5-7). Likewise, named plaintiffs Hernandez's and Juarez's claims share similar issues of law and fact with claims of the proposed subclass including cooks and dishwashers at the restaurant who were paid flat weekly wages, regarding whether defendants properly recorded and paid their overtime hours prior to March 2019. (See Hernandez Decl. ¶ 3; Juarez Decl. ¶¶ 3-4). Finally, named plaintiffs Catalina's and Mendoza's claims share similar issues of law and fact with claims of the proposed subclass including taco chip servers who were paid a straight hourly wage, regarding whether defendants properly recorded and paid their overtime hours prior to March 2019. (Catalina Decl. ¶ 4; Mendoza Decl. ¶ 4).

Second, all of the proposed opt-in plaintiffs and named plaintiffs share a similar issue of law and fact regarding whether defendants properly credited their overtime work under the FLSA. Third, all of the proposed opt-in plaintiffs' and named plaintiffs' claims arise from a similar material factual context, including their work at a single restaurant location, under the same management, and through their work as non-salaried employees. Additional factual issues in common include use of an automated time recording system and the investigation by the United States Department of Labor ("DOL") in 2019 into the adequacy of their overtime pay. (See, e.g., Vazquez Decl. ¶¶ 8-10; Ruiz Decl. ¶¶ 6-8; Quezeda Decl. ¶¶ 7-9; Hernandez Decl. ¶¶ 5-6; Juarez Decl. ¶ 5; Catalina Decl. ¶¶ 7-8; Mendoza Decl. ¶ 7; Morales Aff. ¶¶ 11-12, 17-18; Gomez Aff. ¶¶ 8-14).

In sum, proposed opt-in plaintiffs and named plaintiffs raise similar legal issues as to nonpayment of overtime arising from at least a manageably similar factual setting with respect to

their job requirements and pay provisions. They are alike with regard to multiple material aspects of their litigation. Therefore, conditional certification of a collective action is warranted.

Defendants argue, nonetheless, that certification is inappropriate because plaintiffs do not demonstrate that the three proposed sub-classes are similarly situated to each other, or that plaintiffs are similarly situated to one another. This argument is unavailing for multiple reasons. First, defendants presume a stricter standard than is required by the statute. The text of § 216(b) provides that "any one or more employees" may bring a collective action on behalf of "other employees similarly situated," thus allowing for circumstances, at a minimum, where each named plaintiff is similarly situated to at least one proposed opt-in plaintiff. Second, in the class action context, "a class may be divided into subclasses that are each treated as a class" under Federal Rule of Civil Procedure 23(c)(5). Where collective action conditional certification under the FLSA is a less rigorous standard that class action certification, see, e.g., Genesis, 569 U.S. at 74; Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045 (2016), use of sub-classes is appropriate in this context.

Third, this court has conditionally certified collective actions involving sub-classes. See, e.g., Jimenez-Orozco v. Baker Roofing Co., No. CIV.A. 5:05-CV-34-FL, 2007 WL 4568972, at *5 (E.D.N.C. Dec. 21, 2007); Galvan v. San Jose Mexican Rest. of NC, Inc., No. 7:16-CV-39-FL, 2016 WL 6205783, at *2 (E.D.N.C. Oct. 24, 2016). Fourth, it does not advance the purposes of the FLSA, as emphasized by the Supreme Court in Hoffmann-La Roche, 493 U.S. at 170, 173, to require separate lawsuits for each proposed sub-class of putative plaintiffs, where named plaintiffs representing each sub-class are already joined in the action and amply meet the standard of having "question[s] of law or fact common to all plaintiffs." Fed. R. Civ. P. 20. Where named plaintiffs properly are joined in this action, so too are putative plaintiffs who are similarly situated to them.

9

Finally, even if the conditional certification standard requires similarly situated sub-classes, then plaintiffs meet that standard here by virtue of common legal issues arising from the alleged failure to pay overtime as due, in the context of a limited universe of non-salaried employees sharing the same restaurant setting, same restaurant management, and same time period. Under the circumstances of this case, it would not promote efficiencies for either the court or litigants to require each of the proposed sub-classes to proceed in a separate action.

Defendants also argue that plaintiffs have failed to identify "a policy, scheme, or plan" common to all putative collective action members and classes. (Opp. (DE 35) at 7). However, defendants again presume a requirement different from that suggested by the authorities and case law set forth above. See, e.g., O'Brien, 575 F.3d at 584 ("Showing a 'unified policy' of violations is not required."). In any event, plaintiffs identify a common policy, scheme, or plan, in that they allegedly were subjected to a pay policy prior to the March 2019 DOL investigation that underpaid overtime for non-salaried employees, and that the pay policy changed after that date. (See, e.g., Vazquez Decl. ¶¶ 5-6; Hernandez Decl. ¶ 7; Mendoza Decl. ¶¶ 5-6).

Defendants argue in the alternative that conditional certification is not appropriate because there are too many "individualized determinations" that much be made for each of the putative collective action members. (Opp. (DE 35) at 10 (quoting Syrja v. Westat, Inc., 756 F. Supp. 2d 682, 686 (D. Md. 2010)). However, this court previously has held that conditional certification may be appropriate even in cases where "some individualized inquiry may be necessary." Rosinbaum v. Flowers Foods, Inc., 238 F. Supp. 3d 738, 747 (E.D.N.C. 2017). Other courts are in accord that the key to determining conditional certification is not whether there is a need for individualized determinations, but rather whether there are common issues of fact or law that can be addressed collectively. See, e.g., Campbell, 903 F.3d at 1117.

In any event, defendants have not demonstrated at this juncture that there are too many individualized determinations to undermine the efficiencies that accrue with conditional collective action certification. Two cases that defendants rely upon by comparison on this issue, Syrja v. Westat, Inc., 756 F. Supp. 2d 682, 686 (D. Md. 2010), and Purdham v. Fairfax Cty. Pub. Sch., 629 F. Supp. 2d 544, 548-49 (E.D. Va. 2009), are instructively distinguishable in multiple key respects. In Syrja, the court declined to conditionally certify a class where plaintiffs proposed a collective action of "field interviewers[s]" for a statistical research company, where each field interviewer operated "across multiple geographic locations throughout the country, over different time periods, in offices run by different managers," and "set his own schedule" with assignments varying between managers, varying in an "infinite" number of ways. 756 F. Supp. 2d at 687-688. In addition, the plaintiffs presented no evidence suggesting a uniform national policy of denying overtime. Id. None of these shortcomings are present in the instant case, where there is a single location, single set of managers, and well defined duties.

Equally inapposite is Purdham, where the court declined to conditionally certify a class of "all past and present employees of the Fairfax County Public Schools who performed security, athletic coaching, after school monitoring, ticket-taking . . . and other services for Defendant [school system] in addition to their regular jobs for Defendant." 629 F. Supp. 2d at 546. There, each public school within defendant school system "exercise[d] substantial discretion over the athletic and other activity 'supplements,'" and there where "[n]o county-wide guidelines." Id. at 549. The court noted the number of hours "varies widely between sports and between coaches at different schools within the same sport," and the amount of money received per hour and per activity at different schools "varies significantly," with amounts "determined locally, within each individual school." Id. In this manner, Purdham involves some of the same key distinguishing

11

factors as Syrja, most tellingly lack of uniform management structure and scattered locations all with different pay policies, none of which are present in the instant case.

Here, the types of individualized determinations raised by defendants do not rise to the same degree and type as the disparate geographic locations and management structures found in Syrja and Purdham . For example, defendants assert that an important factual issue will be whether each individual putative collection action member worked more than forty hours in any given workweek, which question is made more individualized because defendants did not maintain computerized records for all employees. But this common disputed element as to all putative plaintiffs may serve to unify the collective action as much as it shows differences. Indeed, the Supreme Court has noted that "[w]hen, as here, the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity—an alleged failure of proof as to an element of the plaintiffs' cause of action—courts should engage that question as a matter of summary judgment, not class certification." Tyson Foods, Inc., 136 S. Ct. at 1047 (emphasis added; quotations omitted).

In this respect, issues raised in affidavits of Morales and Gomez regarding defendants' time recording systems and response to the DOL investigation properly are considered, if at all, in conjunction with other issues going to the merits of the case. (See, e.g., Morales Aff. ¶¶ 11-12, 17-18; Gomez Aff. ¶¶ 8-14). Moreover, conditional certification does not preclude defendants from raising again after discovery, and before trial, the argument that individualized determinations would render trial unwieldy and inefficient. Plaintiffs, for their part, may attempt to propose mechanisms for streamlining trial in the form of "representative evidence." Tyson Foods, Inc., 136 S. Ct. at 1046.

In sum, named plaintiffs have sufficiently demonstrated a sound basis for proceeding as a collective action considering all the evidence presented at this time. Defendants' contentions that there are too many individualized determinations to make are not supported by reference to prior cases or the present record. Therefore, the court in its discretion grants plaintiffs' motion for conditional certification.

B. Notice

As part of the instant motion, plaintiffs seek to have the court "authorize notice to be issued to the putative members of the FLSA collective action." (Mot. (DE 33) at 1). In addition, plaintiffs seek approval of a proposed notice attached to the motion, method for distribution of the same, and provision of contact information of proposed opt-in plaintiffs to aid in such distribution.

Defendants object to that part of the motion seeking approval of the form of notice and distribution, on the basis that such approval is premature, where the court's case management order provides for plaintiffs to file a motion seeking approval of their proposed form of notice "within ten days <u>after</u> the . . . issuance of the order granting conditional certification," with allowance for defendants' response thereto. (Case Management Order (DE 22) at 6) (emphasis added). Plaintiffs agree in reply that "consideration of the proposed notice is premature." (Reply (DE 36) at 9). Therefore, the court will not at this juncture make a final determination as to the form of notice or mechanisms for distribution of the same. At this juncture, the court grants plaintiffs' motion solely to conditionally certify the FLSA collective action and to authorize that notice be issued – in a form still to be determined – to the putative members of the FLSA collective action.

Although final ruling on the form of notice and distribution is premature, the parties raise several issues with respect to the same, which the court addresses preliminarily below provide direction to the parties in their further briefing.

1. Method of Distribution

Defendants object to distribution of the notice by text message, email, and restaurant posting. Plaintiffs' proposed order for distribution of the notice states that "Plaintiffs may send the Notice by first class mail, email, text, and WhatsApp to all potential members" and "Defendants shall post the notice at Defendants' restaurant where potential members of the collective action are likely to view it." (DE 33-1 at 2-3). To aid in the court's approval of a form of notice and distribution, the court directs the parties to address in forthcoming briefing issues including, but not limited to, the following:

   a) If plaintiffs seek to distribute their proposed notice by text and WhatsApp, plaintiffs shall provide an example of the specific form and language of such a proposed notice (e.g., whether a text message notice will contain the same text as a notice sent by mail, or take some other form);

   b) In Edwin v. Jiasheng, Inc., No. 3:19-CV-306-MOC-DSC, 2020 WL 697454 (W.D.N.C. Feb. 11, 2020), cited by plaintiffs, the court allowed notice to be sent by e-mail, but there is no mention of distribution by text or WhatsApp, or dispensing with a showing of "specialized need" at the citation provided;

   c) While defendants argue that disclosure of cell phone and WhatsApp numbers of all putative collective action members "would intrude inappropriately on the privacy of its current and former employees," (Opp. (DE 35) at 16), the court in Edwin directed the defendant to "provide Plaintiff's counsel (in computer-readable electronic format) the names, addresses, e-mail addresses, telephone number, dates of employment, birth dates, and last four digits of the social security number of all persons who are, have been, or will be employed by Defendant as Tipped

14

Employees at Defendant's restaurant from July 1, 2016, to the present" 2020 WL 697454, at *3;

d) The parties are encouraged to confer and provide for the court's consideration information regarding potential opt-in plaintiffs for which they do not have a mailing address;

e) The parties are encouraged to confer and resolve amicably a mechanism for identifying contact information for all potential opt-in plaintiffs, and to develop a mechanism for distribution, beyond U.S. mail, only to the extent necessary to ensure notice is provided to all potential opt-in plaintiffs.

2. Right to Select Counsel and Identity of Defense Counsel

The parties cite competing case law on these issues, which the court reserves for address in conjunction with ruling on any forthcoming motion for approval of form of notice.

3. Information about Retaliation

While plaintiffs have proposed a paragraph in their notice concerning retaliation, defendants have prompted consideration of alternatives to the paragraph, including omission of the final sentence specifically offering legal services by counsel for plaintiffs. Again, the court reserves issues raised by this proposed paragraph for address in conjunction with ruling on any forthcoming motion for approval of form of notice.

In sum, the court authorizes notice to putative class members, and in this respect the instant motion is granted. The court will make final determination as to the form of notice to be approved, the method of distribution, and any information to be provided in aid to distribution, upon resolution of motion by plaintiffs regarding the same, to be filed within ten days of the date of this order.

15

Case 4:19-cv-00171-FL   Document 37   Filed 08/06/20   Page 15 of 16

C.     Phase Two Discovery and Other Deadlines

As set forth in the court's case management order, "[a]fter the court has ruled on any conditional certification motion, the court will enter a scheduling order governing deadlines and procedures for phase two of discovery, including deadlines for expert disclosures, and for filing dispositive motions." (DE 22 at 8). To facilitate the entry of a scheduling order, the parties are DIRECTED to confer and file within ten days of the date of this order a joint notice setting forth the parties' positions on deadlines for phase two of discovery, including deadlines for expert disclosures, and for filing dispositive motions. The parties also shall specify whether they wish to set aside time in the case schedule for mediation pursuant to Local Alternative Dispute Rule 101.1a(b), prior to the conclusion of any phase two of discovery.

## CONCLUSION

Based on the foregoing, plaintiffs' motion to conditionally certify collective action and to authorize issuance of notice to putative collective action members (DE 33) is GRANTED on the terms set forth herein. Plaintiffs are DIRECTED to file, within ten days of the date of this order, a motion for approval of the form of notice and method of distribution of the same. Defendants will have ten days to respond and to submit any alternate proposed form of notice and method(s) of distribution. The parties are DIRECTED to file a joint notice regarding phase two discovery and other deadlines, as set forth herein, within ten days of the date of this order.

SO ORDERED, this the 6th day of August, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge