IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:19-CV-171-FL

| | |
|---|---|
| JOSE VAZQUEZ-AGUILAR, JUSTA HERNANDEZ-ROJO, JOSAFAT JUAREZ-CHAVEZ, SUSANA MENDOZA-BUSTILLO, SANDRA CATALINA-TORRES, on behalf of themselves and all other similarly situated persons,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>ARTURO GASCA, MARIA D. GASCA, and LALAJA, INC., d/b/a El Cerro Grande Restaurant,<br><br>　　　　　　Defendants. | ORDER |

This matter is before the court on the parties' joint motion to approve settlement agreement (DE 40), plaintiffs' motion to rescind (DE 42), defendants' response to the court's order to show cause, which the court construes as a motion to approve settlement agreement (DE 45), and plaintiffs' motion to allow their counsel to withdraw (DE 47). The motions have been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, plaintiffs' motion to rescind is granted, and the remaining the motions are denied.

**STATEMENT OF THE CASE**

Plaintiffs commenced this action on November 29, 2019, and filed amended complaint on December 2, 2019, asserting a claim for violation of the overtime pay provisions of the FLSA, 29 U.S.C. § 207(a), on behalf of themselves and all other similarly situated persons who were

employed by defendants for work at the El Cerro Grande Mexican Restaurant, in New Bern, North Carolina (the "restaurant"). Defendants Arturo Gasca and Maria D. Gasca are alleged to be individual owners and operators of defendant Lalaja Inc., which does business as the restaurant.

In their complaint,[1] plaintiffs seek certification of a collective action for back wages and liquidated damages under §§ 207(a) and 216(b), on behalf of a group of persons defined to include all "current and/or former joint employees of the defendants who jointly employed them and those other similarly situated persons to perform hours worked in excess of 40 hours worked in the same workweek in the restaurant enterprise of [defendant Lalaja, Inc.] in and around Craven County, North Carolina for each workweek ending in the three chronological years immediately preceding the date on which this action was filed." (Compl. ¶ 19). Plaintiffs seek judgment in favor of themselves and each member of the collective action so defined for unpaid wages due, liquidated damages, and interest. Plaintiffs also seek costs, attorney fees, and trial by jury.

The court entered a case management order on March 9, 2020, providing for an initial phase of discovery relevant to the topic of collective action certification, as well as deadlines for filing by plaintiffs of motions for conditional certification and to approve proposed form of notice. The case management order provided that a second phase of merits discovery would commence after the court's ruling on any motion for conditional certification.

On August 6, 2020, the court granted plaintiffs' motion for conditional certification, and directed plaintiffs to file a motion for approval of form of notice and method of distribution of the same. See Vazquez-Aguilar v. Gasca, ___ F. Supp. 3d ___, 2020 WL 4550904, at *8 (E.D.N.C. 2020). In addition, the court directed the parties to file a joint notice regarding phase two discovery and other deadlines for expert disclosures and dispositive motions. However, on August 18, 2020,

---

[1] Hereinafter, all references to the "complaint" in the text, or "Compl." in citations, are to the amended complaint filed December 2, 2019.

2

upon the parties' joint motion, the court suspended all such deadlines to allow the parties to file a motion for approval of settlement agreement.

The parties filed the instant joint motion to approve settlement agreement on September 30, 2020, relying upon a "settlement agreement and release" (DE 40-2) (hereinafter, the "settlement agreement") and a declaration by plaintiffs' counsel Robert J. Willis ("Willis") in support of the motion (DE 41-1). (See DE 40) (hereinafter "joint motion").

Six days later, on October 6, 2020, plaintiffs filed the instant motion to "rescind their [j]oint [m]otion," also described as a motion to "rescind their consent to" the joint motion to the extent that it seeks approval of the release language at paragraph five of the settlement agreement. (DE 42 at 1, 7) (hereinafter "motion to rescind"). In the motion to rescind, plaintiffs forecast filing a motion to enforce a different settlement agreement with modified release terms. (Id. at 6). In support of the motion, plaintiffs rely upon a second declaration by Willis, email correspondence between counsel, and a draft settlement agreement showing changes in redline.

On October 7, 2020, plaintiffs filed a notice stating that plaintiffs will not file a motion to enforce a settlement agreement as forecasted in their motion to rescind, following additional legal research by plaintiffs. Upon that filing, the court entered the following show cause order:

> TEXT ORDER re: joint motion to approve settlement (DE 40), plaintiff's [sic] motion to rescind (DE 42), and related notice (DE 44). Defendants are DIRECTED to show cause within 14 days of the date of this order why the joint motion to approve settlement (DE 40) should not be denied without prejudice, and why plaintiff's [sic] motion to rescind (DE 42) should not be denied as moot in light of plaintiff's [sic] related notice.

(October 9, 2020, order) (hereinafter "show cause order").

Defendants filed the instant response to the show cause order, on October 23, 2020, which the court construes as including a motion to approve the settlement agreement, in reliance upon a declaration of Julian Wright ("Wright"), counsel for defendants. (DE 45 (hereinafter "defendants'

3

motion to approve settlement"). Plaintiffs responded in opposition to defendants' motion to approve settlement, on October 27, 2020, relying upon pleadings in a related case captioned Scalia v. Lalaja, Inc., et al., No. 4:20-CV-189-FL (E.D.N.C.) ("Scalia"); a copy of Revenue Ruling 72-268 (Jan. 1972); and correspondence between counsel for plaintiff in Scalia and counsel for plaintiffs in the instant case.

On November 2, 2020, plaintiffs filed the instant motion to allow their counsel to withdraw (DE 47) (hereinafter "motion to withdraw"). Defendants noticed on November 3, 2020, that they do not oppose the motion to withdraw.

**COURT'S DISCUSSION**

A.  Motion to Rescind

As noted above, in the instant motion, plaintiffs seek to rescind their earlier filed joint motion for approval of settlement agreement, or to rescind their consent to the joint motion. The basis for the instant motion is that plaintiffs "mistakenly filed" the joint motion based upon the plaintiffs' "mistaken misreading" of the scope of the release set forth in paragraph five of the settlement agreement. (DE 42 at 1).

"[D]istrict courts have the inherent authority to manage their dockets . . . with a view toward the efficient and expedient resolution of cases." Dietz v. Bouldin, 136 S. Ct. 1885, 1892 (2016). In addition, the court must construe the federal rules to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Based on these principles, where plaintiffs seek to rescind their prior filing, or to rescind their consent to the joint filing of the same, on the basis that it was mistakenly filed, the court finds good cause to allow plaintiffs to do so. Plaintiffs filed their motion to rescind only six days after the original joint motion was filed, before the court had taken any action on the joint motion. There

4

is no indication that the joint motion was filed in bad faith. In addition, the instant motion to rescind seeks limited relief, in the form of withdrawal of plaintiffs' consent to the joint motion. Where court has inherent authority to manage its docket, and to encourage a just determination of this action, in light of a mistake of plaintiffs in making their filing, the court allows plaintiffs to rescind their consent to the joint motion. The joint motion remains pending as a motion by defendants only to approve the settlement agreement, reinforced by their later motion reiterating the same.

Defendants argue that the court should not allow plaintiffs to "withdraw their consent from the Settlement Agreement," (Defs' Resp. (DE 45) at 1), and that the court should "proceed to consider the merits of approving the Settlement Agreement as filed on September 30, 2020." (Id. at 15). In ruling on the instant motion, however, the court does not address whether plaintiffs may withdraw their consent from the settlement agreement. The court's ruling in this section is limited to whether plaintiffs may withdraw their consent from filing of the joint motion to approve the settlement agreement. The court addresses in the next section whether plaintiffs may avoid the settlement agreement based upon unilateral mistake, as well as the court's evaluation of the same for approval.

In sum, plaintiffs' motion to rescind is granted. The court henceforth will consider the motion for approval of settlement agreement (DE 40) as one filed only on behalf of defendants.

B.  Motions to Approve Settlement Agreement

In their motions, defendants seek the court's approval of the settlement agreement, which is attached as Exhibit A to the motion filed September 30, 2020. (DE 40-2). Plaintiffs oppose approval of the settlement agreement on the basis that they mistakenly agreed to its terms, and on the basis that the release therein is overbroad and improper under the circumstances of the case.

5

Before turning to the parties' arguments, the court sets forth the law applicable to judicial approval of settlement agreements in FLSA cases.

"[U]nder the FLSA, . . . there is a judicial prohibition against the unsupervised waiver or settlement of claims." Taylor v. Progress Energy, Inc., 493 F.3d 454, 460 (4th Cir. 2007) ("Taylor II") (citing D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 114-16 (1946)). "[E]mployees may waive or release their FMLA rights with the prior approval of the [Department of Labor] or a court." Taylor v. Progress Energy, Inc., 415 F.3d 364, 371 (4th Cir. 2005) ("Taylor I").[2]

Although the United States Court of Appeals for the Fourth Circuit has not addressed a standard or factors to consider in evaluating whether to approve a settlement under the FLSA, courts in this circuit have followed the standard articulated in Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div., 679 F.2d 1350, 1353 (11th Cir. 1982). There, the court opined that "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Id. (emphasis added). The court further reasoned:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

---

[2] In Taylor II, the United States Court of Appeal reinstated on rehearing its prior opinion in Taylor I, which had been previously vacated for granting of rehearing. See Taylor II, 493 F.3d at 463.

Id. at 1354 (emphasis added). Based on Lynn's Food Stores, this court and others within this circuit have identified a number of factors for consideration in approval of a settlement, such as: "1) whether there are FLSA issues actually in dispute; 2) the fairness and reasonableness in light of the relevant factors from Rule 23, and 3) the reasonableness of the attorney's fees." Beasley v. Custom Communs., Inc., No. 5:15-CV-583-FL, 2017 U.S. Dist. LEXIS 219975, *4 (E.D.N.C. Oct. 24, 2017)[3] (quoting Duprey v. Scotts Co., LLC, 30 F. Supp. 3d 404, 408 (D. Md. 2014)). In addition, when evaluating fairness and reasonableness, courts have considered the following:

> 1) the extent of discovery that has taken place; 2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; 3) the absence of fraud or collusion in the settlement; 4) the experience of counsel who have represented the plaintiffs; 5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object; and 6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

Id. at *5-6 (quoting Patel v. Barot, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014)).

Finally, "[i]n certain circumstances, [a] general release can render a FLSA settlement agreement unreasonable." Id. at *6 n.3. A "general release is impermissibly overbroad" if it is "purportedly waiving any possible claim against Defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," such as where "[t]here has been no showing that [the] Plaintiff was or will be independently compensated for the broad release of claims unrelated to any dispute regarding FLSA coverage or wages due," or "that [the] Plaintiff has a full understanding of what he is releasing in exchange for a settlement payment." Robinson v. Harrison Transportation Servs., Inc., No. 5:15-CV-298-F, 2016 WL 3647616, at *4 (E.D.N.C. June 30, 2016).

---

[3] A Westlaw citation is not available.

As an initial matter, the court considers plaintiffs' argument that they should be allowed to avoid the settlement agreement because it resulted from a unilateral mistake they made in misreading the release. "Settlement agreements operate on contract principles, and thus the preclusive effect of a settlement agreement should be measured by the intent of the parties." Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 211 (4th Cir. 2009) (quotations omitted). "It is the general law of contracts that the purport of a written instrument is to be gathered from its four corners, and the four corners are to be ascertained from the language used in the instrument." Carolina Power & Light Co. v. Bowman, 229 N.C. 682, 693-94 (1949). "Where the terms of the contract are not ambiguous, the express language of the contract controls in determining its meaning and not what either party thought the agreement to be." Crockett v. First Fed. Sav. & Loan Ass'n, 289 N.C. 620, 631 (1976). Accordingly, "[a] unilateral mistake, unaccompanied by fraud, imposition, undue influence, or like oppressive circumstances, is not sufficient to avoid a contract or conveyance." Marriott Fin. Servs., Inc. v. Capitol Funds, Inc., 288 N.C. 122, 136 (1975). "In order for the remedy of rescission to be operable . . . there must be mutual mistake of fact." Id.

Here, the language of the release is clear and unambiguous. It serves as a broad, general, release in favor of defendants of "any and all claims, causes of action, demands, debts, obligations, damages, or liability arising prior to" September 30, 2020, the effective date of the settlement agreement. (Settlement Agreement ¶ 5 (DE 40-2 at 6)). Thus, the express language of the settlement agreement controls the meaning of the settlement agreement and not what either party thought the agreement to be. Under these circumstances, the general rule applies that a unilateral mistake is not sufficient to avoid the settlement agreement.

Plaintiffs argue, nonetheless, that their unilateral mistake as to the scope of the release is sufficient to avoid the settlement agreement because defendant "had reason to know of plaintiffs' mistake," citing an exception to the general rule of unilateral mistake recognized by the North Carolina Court of Appeals in Howell v. Waters, 82 N.C. App. 481, 488 (1986). See Marriott Fin. Servs., 288 N.C. at 136 (1975) ("[A]s a general rule relief will be denied where the party against whom it is sought [w]as ignorant that the other party was acting under a mistake and the former's conduct in no way contributed thereto.") (quotations omitted).

Plaintiffs have not demonstrated, however, that defendants knew or should have known that plaintiffs were acting under a mistake of fact at the time the agreement was formed. Plaintiffs suggest that defendants should have known that they misread the scope of the release because plaintiffs' counsel demanded several other changes to a draft of the settlement agreement based upon the Robinson decision. Plaintiffs suggest that because defendant was aware plaintiffs were relying upon Robinson, then defendants should have known that plaintiffs also would object to the scope of the release based on Robinson but for their mistake in misreading it. This suggestion is too attenuated and speculative, where defendants were in an adversarial position to plaintiffs, and the record does not reflect that defendants accepted Robinson as controlling in all respects as a matter of fact or law. Accordingly, plaintiffs' unilateral mistake is insufficient in itself to avoid the settlement agreement.

The court turns next to plaintiffs' argument that the settlement agreement should not be approved because the release is overbroad. The court considers this argument in the context of other factors and the totality of the circumstances bearing upon judicial approval of the settlement agreement, including the circumstances of the ongoing related case in Scalia.

9

As noted above, the release in the settlement agreement is a general release, broadly worded to preclude any and all claims that plaintiffs[4] may have against defendant, including but not limited to the FLSA claims that plaintiffs have asserted in this case. Furthermore, through the release, plaintiffs "agree that this Agreement may be used as an affirmative defense and complete bar to any such claim, lawsuit, or any other type of action that any [plaintiff] may file against any Defendant for any claim released in this Agreement." (DE 40-2 at 6). Finally, plaintiffs "agree to waive any right to any personal recovery in any action or proceeding that may be commenced on [plaintiffs'] behalf by anyone other than [plaintiffs]." (Id. at 6-7).

The court adheres to the reasoning in Beasley and Robinson, although unpublished and not binding, in determining that the instant general release renders the settlement agreement unreasonable under the unique circumstances of this case. As an initial matter, the release is overbroad because it is "purportedly waiving any possible claim against Defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," in a context where "[t]here has been no showing that [the] Plaintiff was or will be independently compensated for the broad release of claims unrelated to any dispute regarding FLSA coverage or wages due." Robinson, 2016 WL 3647616, at *4.

Unlike in Beasley, there has been not showing here that plaintiffs will be independently compensated for the broad release through "service payments to be paid to the named plaintiffs, together with their payments of unpaid overtime compensation." Beasley, 2017 U.S. Dist. LEXIS 219975, *6 n.3. In Beasley, such "service awards" were in the amount of $15,000.00 each to two plaintiffs, and $10,000 to a third. Id. at *9-10. By contrast, the $18,000 settlement payment in the

---

[4] The settlement agreement and release applies to both plaintiffs and "Consenting Persons," defined in the agreement to include Gerardo Quezada-Mendoza ("Quezada-Mendoza") and Edduar Ruiz Macias ("Macias"). (DE 40-2 at 1, 6). For ease of reference, unless otherwise specified, all references to "plaintiffs" in the text above summarizing the terms of the release include both plaintiffs and the Consenting Persons.

instant case is "to be divided amongst them in proportion to the amount of each of their claims," with individual amounts ranging from $93.00 for plaintiffs Catalina-Torres and Mendoza-Bustillo, to a maximum of $4,754.00 for plaintiff Vazquez-Aguilar. (See DE 40-2 at 3).

In addition to and in combination with the scope of the release, other factors preclude judicial approval of the settlement agreement under the unique circumstances of this case. In particular, the court takes into account that the Department of Labor has brought suit under the FLSA in Scalia, in part, to obtain an award of back wages and "liquidated damages to [the] employees" of defendants' expressly enumerated by reference in the complaint in Scalia. (Scalia Compl.(No. 4:20-CV-189-FL at 5) (emphasis added)). Such enumerated employees include five who are plaintiffs or Consenting Persons in the instant case. (Scalia Compl. Appx. A. (No. 4:20-CV-189-FL at DE 1-1)).[5] The complaint in Scalia further reserves the right to pursue damages under the FLSA for any "such other employees as hereafter may be identified and named prior to or at trial." (Scalia Compl. (No. 4:20-CV-189-FL at DE 1) at 5-6)). Where the instant release precludes plaintiffs or Consenting Persons from "any personal recovery in any action or proceeding that may be commenced on [their] behalf by anyone," (DE 40-2 at 6-7), a substantial issue is raised whether the release would preclude or impede recovery of part of the damages sought on behalf of the same employees in Scalia. The court need not resolve this issue definitively at this juncture, but instead the court identifies the issue and the resulting need for coordination of the related cases, as a factor among others in denying without prejudice the motions for approval of settlement agreement.

---

[5] It is not entirely clear that the person listed as "Sandra Catalina-Torres" as a plaintiff in the settlement agreement is the same person as "Sandra Torres Cores" in the Scalia complaint Appendix A. For purposes of the instant motion, based upon the representation of plaintiffs' counsel (see, e.g., DE 48 at 4), the court presumes an identity match.

11

In addition, the court takes into account issues raised by the filing of the <u>Scalia</u> complaint on the continued viability of some or all of the claims in the instant action, and the fairness and reasonableness of the settlement agreement as it pertains to both plaintiffs named in the <u>Scalia</u> complaint and those not named in the <u>Scalia</u> complaint. Under the FLSA, "[t]he right provided by [§ 216(b)] to bring [a private] action by or on behalf of any employee to recover the liability specified in the first sentence of such subsection . . . <u>shall terminate upon the filing of a complaint by the Secretary [of the Department of Labor] in an action under this subsection</u>" seeking unpaid overtime compensation or other damages "owing to such employee." 29 U.S.C. § 216(c) (emphasis added). Although the Fourth Circuit has not addressed the impact of this provision on a private suit, the Sixth Circuit has stated that § 216(c) "<u>automatically terminates</u> the right of the individual employee to sue for wages covered by the Secretary's suit." <u>Chao v. Hosp. Staffing Servs., Inc.</u>, 270 F.3d 374, 391 (6th Cir. 2001) (emphasis added). The court is mindful that plaintiff in <u>Scalia</u>, according to a filing by plaintiffs in the instant case, has suggested that <u>Scalia</u> will not impact the viability of the instant case. (<u>See</u> DE 46-5 at 1). Nevertheless, at this juncture, the court need not resolve definitively this issue. Instead, the court again identifies the issue and the resulting need for coordination of the related cases, as a factor among others in denying without prejudice the motions for approval of settlement agreement.[6]

In urging the court to approve the settlement agreement, defendants argue that <u>Robinson</u> is distinguishable because, there, plaintiff did not have a "full understanding of what he is releasing in exchange for a settlement payment." <u>Robinson</u>, 2016 WL 3647616, at *4. Here, by contrast, defendant argues that plaintiffs themselves proposed the broad release and therefore cannot now

---

[6] Plaintiffs argue that the court must determine if their right to pursue the instant action has been terminated by the <u>Scalia</u> action, under 29 U.S.C. § 216(c). It is not clear, however, what form of motion plaintiffs seek to bring to require this determination. If plaintiffs seek a voluntary dismissal, they may move for one. If defendants seek to dismiss the instant action on this basis, they, too, may move for dismissal on that basis.

claim that they did not understand what they were releasing by entering into the settlement agreement. This may be so, but the court does not rely upon a lack of knowledge on the part of plaintiffs as the basis for denying the instant motions for approval of settlement. Instead, the court denies defendants' motions to approve the settlement agreement because of the overly broad scope of the release, considered in conjunction with the ongoing related case in Scalia.

In sum, the foregoing factors preclude approval by the court of the instant settlement agreement. While other factors identified in the case law may be neutral or favor approval of the settlement agreement in the instant case, the court reserves for a later juncture further consideration of such factors in conjunction with a more complete record regarding the relationship between the instant case and Scalia, in the event that an amended settlement agreement is proposed for court approval. Accordingly, defendants' motions for approval of settlement agreement are denied without prejudice.

C.   Motion to Allow Counsel to Withdraw

Plaintiffs move to allow counsel to withdraw on the basis that "[a] problem has developed between all of the Seven Persons[7] and their undersigned counsel of record in this case in that all of the Seven Persons insist upon taking a course of action material to this case that is contrary to the advice and judgment of their undersigned counsel of record in this case." (DE 48 at 2-3). "As a consequence of that insistence, all of the Seven Persons have declined to communicate and have not communicated with their undersigned counsel about a number of material issues concerning that advice and other matters in the case since September 30, 2020." (Id. at 3). According to the motion, "the unfortunate factual predicate for both grounds to withdraw . . . has existed since September 30, 2020." (Id. at 4).

---

[7]   The term "Seven Persons" is defined in the motion to include the five named plaintiffs and the two Consenting Persons.

13

An attorney must seek leave of the court to withdraw his or her notice of appearance in a civil case. See Local Civil Rule 5.2(e). "If withdrawal would leave a party without representation, the motion to withdraw shall be accompanied by a proposed order granting the motion on a form available from the clerk," regarding self-representation. Id.

The court is unable to grant the instant motion to withdraw based upon the present showing. In particular, the motion is premised upon two assumptions which may have changed in light of the court's ruling herein. First, the motion suggests that withdraw is required based upon counsel's mistaken filing of the joint motion on September 30, 2020. As set forth herein, however, the court has allowed plaintiffs to rescind consent to that motion. Second, the motion suggests that an order on motion to withdraw, including form language for self-representation, is required for only two persons not named in Appendix A to the Scalia complaint. Based upon the court's analysis herein, however, the court does not presume at this juncture that the instant action is terminated for any of the plaintiffs or Consenting Persons.

Furthermore, the motion does not provide sufficient information for the court to verify the basis for withdrawal under Rule 1.16(b)(4) or Rule 1.16(b)(6) of the Code of Professional Responsibility. For example, plaintiffs include a reference that "one or more of the Seven Persons who have pending a T visa application(s) with the United States Customs and Immigration Service (USCIS) have separate counsel other than the undersigned in connection with such T visa application(s)." (DE 48 at 2). It is not clear how this impacts counsel's representation of plaintiffs in this case.

Accordingly, the instant motion to withdraw is denied without prejudice. Plaintiffs may file an amended motion to withdraw, updated to address the foregoing issues, if and when such a an amended motion is warranted by the circumstances of this case. If necessary for a more

14

Case 4:19-cv-00171-FL   Document 50   Filed 01/14/21   Page 14 of 16

complete disclosure, counsel may provide through ex parte sealed in camera filing further details bearing upon issues with representation for the court's consideration of withdrawal under Rule 1.16(b)(4) or Rule 1.16(b)(6).

D.     Case Scheduling

In light of the court's ruling herein, the court reinstates with some modification the deadlines set forth in the court's August 6, 2020, order granting motion to certify class, which were suspended on August 18, 2020, to allow settlement activities to take place. In particular, the parties are DIRECTED to file a joint notice regarding phase two of discovery and other deadlines, as set forth in the court's August 6, 2020, order, within 14 days of the date of this order. Said notice shall specify proposed deadlines for plaintiffs to file a motion for approval of the form of notice and method of distribution of the same, as well as the time period for defendants to respond and submit any alternative proposed form of notice and method(s) of distribution. Furthermore, the parties shall specify whether they seek a stay, or a period of time to schedule coordinated or global settlement activities, in conjunction with the Scalia action. Thereupon, the court will enter such further order regarding case scheduling as is warranted.

## CONCLUSION

Based on the foregoing, plaintiffs' motion to rescind (DE 42) is GRANTED. The motion to approve settlement agreement (DE 40), and defendants' response to the court's order to show cause, which the court construes as a renewed motion to approve settlement agreement (DE 45), are DENIED. Plaintiffs' motion to allow their counsel to withdraw (DE 47) is DENIED WITHOUT PREJUDICE. The parties are DIRECTED to file a joint notice regarding phase two discovery and other deadlines, as set forth in further detail herein, within 14 days of the date of this order.

15

SO ORDERED, this the 14th day of January, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge